Matter of O'Connor v Sharpe (2022 NY Slip Op 05198)

Matter of O'Connor v Sharpe

2022 NY Slip Op 05198

Decided on September 9, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 9, 2022

535999
[*1]In the Matter of John P. O'Connor, Respondent,
v
Larry Sharpe et al., Appellants, and New York State Board of Elections, Respondent, et al., Respondent. (Proceeding No. 1.)
In the Matter of Larry Sharpe, Appellant,
v
New York State Board of Elections et al., Respondents. (Proceeding No. 2.)
In the Matter of Andrew Hollister et al., Appellants,
v
New York State Board of Elections et al., Respondents. (Proceeding No. 3.)

Calendar Date:September 9, 2022

Before:Garry, P.J., Egan Jr., Lynch, Clark and Ceresia, JJ.

Law Office of Gary L. Donoyan, Manhasset (Gary L. Donoyan of counsel), for appellants.
Messina, Perillo & Hill, LLP, Sayville (John Ciampoli of counsel), for John P. O'Connor, respondent.
New York State Board of Elections, Albany (Brian Quail of counsel), for New York State Board of Elections, respondent.

Per Curiam.
Appeal from an order of the Supreme Court (David A. Weinstein, J.), entered August 20, 2022 in Albany County, which, among other things, dismissed petitioners' applications, in proceedings Nos. 2 and 3 pursuant to Election Law § 16-102, to declare valid the independent nominating petition naming petitioners as the Libertarian Party candidates for the public offices of Governor, Lieutenant Governor, Comptroller and United States Senator in the November 8, 2022 general election.
In February 2022, petitioners Larry Sharpe, Andrew Hollister, William K. Schmidt, Thomas D. Quiter (hereinafter collectively referred to as the candidates) and another filed a certificate of designation purporting to designate them as the Libertarian Party candidates for the statewide public offices of Governor, Lieutenant Governor, Comptroller and United States Senator, respectively.[FN1] Because the Libertarian Party presidential candidate did not receive sufficient votes in the 2020 general election to enable the Libertarian Party to retain its status as a recognized political party (see Election Law § 1-104 [3]), respondent New York State Board of Elections concluded that the foregoing certificate of designation was facially invalid. As a result, the candidates sought to obtain ballot access via an independent nominating petition, which, as relevant here, required them to obtain signatures from at least 45,000 registered voters (see Election Law § 6-142 [1]).
The candidates thereafter filed an 11-volume independent nominating petition that, in turn, allegedly contained the required number — or in excess of the required number — of signatures. Objections and specifications to the independent nominating petition were filed with the Board, wherein the objector contended that such petition contained only 42,664 signatures — thus falling short of the statutory requirement. Prior to the Board ruling on such objections, the objector and petitioner in proceeding No. 1, John P. O'Connor, commenced that proceeding seeking to invalidate the candidates' independent nominating petition upon various grounds, including that it failed to contain the minimum number of required signatures. Shortly thereafter, the Board — following "a prima facie examination of the independent [n]ominating [p]etition" — ruled that such petition contained an insufficient number of signatures (42,356) and deemed such petition to be invalid. In so doing, the Board did not rule upon O'Connor's objections, concluding that they were academic.
The candidates then separately commenced proceedings Nos. 2 and 3 seeking to validate the independent nominating petition contending, among other things, that such petition "appear[ed] to contain more than the minimum number of signatures" required and, in any event, that the Board lacked the authority to assess — without reference to O'Connor's objections and specifications — the validity of the independent nominating petition itself. Stated differently, the candidates [*2]argued that the Board could not sua sponte determine whether the independent nominating petition was facially valid in the first instance. The Board and O'Connor answered, and the parties appeared before Supreme Court for oral argument. Supreme Court subsequently dismissed proceedings Nos. 2 and 3 seeking to validate the independent nominating petition and dismissed proceeding No. 1 as moot. This appeal by the candidates ensued.
We affirm. Preliminarily, we reject the candidates' assertion that, absent resort or reference to the objections and specifications filed by O'Connor,[FN2] the Board lacked the authority to review the independent nominating petition and determine its facial validity. The candidates' argument in this regard is premised upon a flawed interpretation of Election Law § 6-154 (1) and, further, overlooks the plain language of Election Law § 6-154 (4).
Election Law § 6-154 (1) provides that "[a]ny petition filed with the officer or board charged with the duty of receiving it shall be presumptively valid if it is in proper form and appears to bear the requisite number of signatures, authenticated in a manner prescribed by this chapter" (emphasis added). According to the candidates, the independent nominating petition contained 5,200 pages that, in turn, each had space for 10 signatures — the implication being that such petition, at least theoretically, contained 52,000 voter signatures or well in excess of the 45,000 signatures required under Election Law § 6-142 (1).[FN3] Inasmuch as the independent nominating petition appeared to contain the required number of signatures, the candidates' argument continues, it was presumptively valid — "even if it [did] not actually bear the requisite number of signatures." Although acknowledging that the Board could count the number of signatures contained within the independent nominating petition, the candidates nonetheless argue that the Board was powerless to invalidate such petition without reference to the objections and specifications filed by O'Connor. In other words, unless and until the Board ruled on the particular objections and specifications, it was — according to the candidates — bound by the presumptive validity of the independent nominating petition and could not undertake an independent review thereof. We disagree.
We note in passing that the candidates' premise as to the total number of signatures potentially contained within the independent nominating petition is flawed inasmuch as certain pages contain space for only eight signatures and a multitude of others contain fewer than 10 signatures per page. In any event, the suggestion that the Board lacked the authority to invalidate the independent nominating petition ignores both the manner in which the review of such petition unfolded and, more to the point, the plain language of Election Law § 6-154 (1) and (4).
As a starting point, the Board asserts — and a review of the record reveals — that, contrary to the candidates' claim[*3], the Board indeed undertook its review of the independent nominating petition in response to the objections filed by O'Connor. That is, it was the Board's receipt of O'Connor's objections that triggered its review of the independent nominating petition in the first instance. Once the Board determined that the independent nominating petition contained fewer than 45,000 signatures, it was unnecessary for it to engage in a line-by-line review and rule upon the objections and specifications previously filed, and the Board's failure to do so did not — as the candidates claim — divest it of the authority to invalidate the independent nominating petition based upon an insufficient number of signatures.
Moreover, even if, as the candidates now posit, O'Connor's objections and specifications were not properly filed and served upon the candidates, and the Board, in turn, undertook its own review of the independent nominating petition, we are satisfied that the statute permits the Board to do so. Although Election Law § 6-154 (1) provides that a petition "shall be presumptively valid if it is in proper form and appears to bear the requisite number of signatures," ascertaining whether a petition "appears" to satisfy the relevant signature requirement necessarily authorizes the Board to assess the signature totals and, if necessary, to count the signatures. This is essentially a statutorily authorized ministerial function. Indeed, as noted previously, the candidates acknowledge that the Board may "add[] up the signatures" on the independent nominating petition. However, their further suggestion — that the Board, having concluded that a particular petition contains an insufficient number of signatures, is powerless to invalidate such petition without ruling upon any corresponding objections and specifications — is, in our view, belied by the language of Election Law § 6-154 (4), which provides that "[w]hen a determination is made that a certificate or petition is insufficient, . . . [the] [B]oard shall give notice of the determination forthwith by mail to each candidate named in the petition or certificate, and, if the determination is made upon specified objections, the objector shall be notified" (emphasis added). If, as the candidates contend, the Board's review of a petition is conditioned upon or limited to the objections and specifications filed with respect thereto, the highlighted statutory language would be superfluous.
In any event, "[w]here a petition is invalidated by the [B]oard . . . and a proceeding is instituted to reinstate the petition, the burden of proof is on the candidate[s] to establish that the petition is valid" (Matter of Goldstein v Carlsen, 59 AD2d 642, 643 [4th Dept 1977], affd 42 NY2d 993 [1977]; see Matter of Mielnicki v New York State Bd. of Elections, 224 AD2d 819, 820 [3d Dept 1996], lv denied 87 NY2d 809 [1996]). Having failed to allege, much less demonstrate, that their independent nominating petition contained the requisite [*4]number of signatures, the candidates necessarily failed to meet that burden here. In light of the foregoing, we are satisfied that the Board properly invalidated the independent nominating petition based upon an insufficient number of signatures.
The candidates' remaining arguments do not warrant extended discussion. Their constitutional claim — that the signature requirements of Election Law § 6-142 (1) impose an onerous burden upon and effectively abridge their rights under the First and Fourteenth Amendments — fails for a variety of reasons. Preliminarily, the candidates did not raise this constitutional claim in their respective petitions, opting instead to couch such claim as sounding in equity. However, regardless of the characterization employed, the candidates indeed are challenging the constitutionality of Election Law § 6-142, which required them to place the Attorney General on notice (see Executive Law § 71 [1], [3]; Matter of Capital Siding & Constr., LLC [Alltek Energy Sys., Inc.], 138 AD3d 1265, 1267 [3d Dept 2016], lv denied 27 NY3d 911 [2016]). Upon reviewing the record before us, we find no indication that they did so. Moreover, even assuming that recent federal decisions do not cast serious doubt upon the merits of the candidates' constitutional challenge (see e.g. SAM Party of New York v Kosinski, 987 F3d 267 [2d Cir 2021]; SAM Party of New York v Kosinski, 576 F Supp 3d 151 [SDNY 2021]), there is no question that state "statutes carry a presumption of constitutionality, imposing a heavy burden on a party trying to overcome it" (Maple Tree Homes, Inc. v County of Sullivan, 17 AD3d 965, 966 [3d Dept 2005] [internal quotation marks, brackets and citation omitted], appeal dismissed 5 NY3d 782 [2005]). Simply put, the candidates failed to meet that heavy burden here (see generally Jenness v Fortson, 403 US 431 [1971]). The candidates' remaining contentions — to the extent not specifically addressed — have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Lynch, Clark and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The certificate of designation also named a Libertarian Party candidate for the public office of Attorney General, but that individual is not named as a party in either of the proceedings to validate the independent nominating petition and has not otherwise appeared in these matters.

Footnote 2: The candidates' assertion that the record does not contain proof that such objections and specifications were timely filed and served — raised for the first time in their reply brief — is not properly before us (see e.g. Matter of Dixon v Rich, 200 AD3d 1378, 1379 [3d Dept 2021]). In any event, as set forth herein, the timeliness and/or validity of such objections and specifications ultimately is not dispositive.
Footnote 3: Notably, the candidates neither allege that the independent nominating petition actually contains sufficient voter signatures to meet the statutory requirement, nor do they concede that the petition fails to bear the requisite number of signatures. Rather, they rely solely upon the combination of the number of pages submitted and the number of signature spaces available on each page as support for the proposition that the petition "appears" to contain the required number of voter signatures.